IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIK GARCIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | Case No. 4:24-CV-02391 |
| WOODHILL REALTY COMPANY, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendant, WOODHILL REALTY COMPANY, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.  This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's WOODHILL REALTY COMPANY, failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.  Plaintiff ERIK GARCIA (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.  Plaintiff is disabled as defined by the ADA.

4.  Plaintiff is required to traverse in a wheelchair and is substantially limited in

1

performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5. Plaintiff uses a wheelchair for mobility purposes.

6. In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7. Defendant, WOODHILL REALTY COMPANY (hereinafter "WOODHILL REALTY COMPANY") is a domestic company that transacts business in the State of Texas and within this judicial district.

8. Defendant, WOODHILL REALTY COMPANY, may be properly served with process via its registered agent for service, to wit: c/o Tarantino Properties, Inc., Registered Agent, 7887 San Felipe #237, Houston, TX 77063.

**FACTUAL ALLEGATIONS**

9. On or about May 4, 2024, Plaintiff was a customer at "Tacos El Jaibo," a taco restaurant located at 5821 Bellaire Blvd., Houston, TX 77081, referenced herein as "Tacos El". *See* Receipt attached as Exhibit 1. *See also* photo of Plaintiff attached as Exhibit 2.

10. Defendant, WOODHILL REALTY COMPANY, is the owner or co-owner of the real property and improvements that Tacos El Jaibo is situated upon and that is the subject of this action, referenced herein as the "Property."

11. Defendant, WOODHILL REALTY COMPANY, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, WOODHILL REALTY COMPANY, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

12. Plaintiff's access to Tacos El Jaibo and other businesses at the Property, located at 5821 Bellaire Blvd., Houston, TX 77081, Harris County Property Appraiser's property identification number 0370580220002 and 0370580220002 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13. Although the Property is comprised of two parcels, the Property should be considered as one "site" for purposes of this lawsuit because the two parcels are owned by the same entity, the two parcels share a common building, the two parcels share a common parking lot, the two parcels share a common accessible route, and there are no open or notorious markings which would notify a reasonable person that there are separate parcels.

14. Plaintiff lives only 3 miles from the Property.

15. Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

16. **PRESUIT NOTICE:** On May 14, 2024, Plaintiff mailed Defendant, WOODHILL REALTY COMPANY's Registered Agent via certified mail/return receipt requested a pre-suit notice of the violations and his intent to file this lawsuit if a settlement could not be reached to resolve the claim prior to filing this Complaint. This mailing was received and signed for on May 20, 2024. *See* Pre-suit Letter dated May 14, 2024 attached as Exhibit 3.

17. Plaintiff has visited the Property once before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

18. Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

19. Plaintiff travelled to the Property as a customer at least once before as a customer, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

20. Although Plaintiff may not have personally encountered each and every barrier to

4

access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

21. Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

22. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

23. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education,

transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

24. Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

         * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

25. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

26. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

6

27. The Property is a public accommodation and service establishment.

28. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

29. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

30. The Property must be, but is not, in compliance with the ADA and ADAAG.

31. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32. Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

33. Defendant, WOODHILL REALTY COMPANY, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. §

12182(b)(2)(A)(iv).

34. Defendant, WOODHILL REALTY COMPANY, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, WOODHILL REALTY COMPANY, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

35. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

   i. At Unit 5805, due to the proximity of an accessible ramp, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

   ii. In front of Unit 5817, one of the two accessible parking spaces and associated access aisle have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access

|      | |
|------|-|
|      | would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle. |
| iii. | In front of Unit 5817, the access aisle to the accessible parking space referenced in (ii) is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface. |
| iv.  | In front of Unit 5817, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space referenced in (ii) in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface. |
| v.   | In front of Unit 5817, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured. |

vi. In front of Unit 5817, one of the two accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

vii. The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards. There are 85 total parking spaces at the Property, which require a minimum of four (4) accessible parking spaces, but there are only two (2). This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

viii. Inside Tacos El Jaibo, the to-go/take-out register counter is lacking any portion of the counter that has a maximum height of 36 (thirty-six) inches from the finished floor in violation of Section 904.4 of the 2010 ADAAG standards, all portions of the to-go/take-out counter exceed 36 (thirty-six) inches in height from the finished floor. This barrier to access would make it difficult for Plaintiff to properly transact business at the Property.

ix. Inside Tacos El Jaibo, due to the placement of gumball machines and boxes, the interior has walking surfaces leading to the restroom lacking a 36 (thirty-six) inch clear width. As a result, the Property lacks an accessible route connecting the exterior of the Property to all accessible elements and features inside the Property in violation of Section 206.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access

11

public features of the Property due to the lack of a safe accessible route leading from the exterior to interior spaces inside the Property.

x. Inside Tacos El Jaibo, due to the placement of gumball machines and boxes, the interior has walking surfaces leading to the restroom lacking a 36 (thirty-six) inch clear width, in violation of Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to properly utilize public features at the Property because the width of Plaintiff's wheelchair would prevent passage through areas with a width less than 36 inches.

xi. Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**TACOS EL JAIBO RESTROOMS**

xii. The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

xiii. The door hardware providing access to the restrooms requires tight grasping and twisting of the wrist in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

xiv. The lavatories and/or sinks in the restrooms have exposed pipes and surfaces and are not insulated or configured to protect against contact in violation of Section 606.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize

the sink as the pipes underneath the sink typically have sharp surfaces and/or hot pipes, and since individuals in wheelchairs use a sink while seated, their legs are particularly vulnerable to these threats.

xv. The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40-inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up.

xvi. The actionable mechanism of the paper towel dispenser in the restroom is located outside the maximum prescribed vertical reach range of 48 inches above the finished floor as set forth in Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the paper towel dispenser as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

xvii. The hand operated flush control is not located on the open side of the accessible toilet in violation of Section 604.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to flush the toilet as the location of the flush control on the open side is significantly easier to reach than when it is positioned on the closed side.

      xviii.    The door of the restroom entrance lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18" of the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

      xix.    The soap dispenser in the restroom is located higher than 48 inches above the finished floor which is outside the prescribed vertical reach ranges set forth in Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the soap dispenser as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

36. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

37. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

38. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

39. All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

40. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

41. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, WOODHILL REALTY COMPANY, has the financial resources to make the necessary modifications as the collective appraised value of the two parcels comprising the Property exceeds $1 million.

42. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

43. Upon information and good faith belief, the Property has been altered since 2010.

44. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

45. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, WOODHILL REALTY COMPANY, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

46. Plaintiff's requested relief serves the public interest.

47. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, WOODHILL REALTY COMPANY

48. Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, WOODHILL REALTY COMPANY, pursuant to 42 U.S.C. §§ 12188 and 12205.

49. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, WOODHILL REALTY COMPANY, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendant, WOODHILL REALTY COMPANY, in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendant, WOODHILL REALTY COMPANY, from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendant, WOODHILL REALTY COMPANY, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)  That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: June 25, 2024.

Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

ATTORNEYS FOR PLAINTIFF